UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE FUNDERBURG,

          **Plaintiff,**                **CIVIL ACTION NO. 15-cv-10068**

          **v.**                      **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

          **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Duane Funderburg seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 16). Plaintiff has also filed a response to Defendant's Motion. (Docket no. 17.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED and Defendant's Motion for Summary Judgment (docket no. 16) be GRANTED.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on June 16, 2006; Administrative Law Judge (ALJ) Richard L. Sasena issued an unfavorable decision with regard to that application on February 24, 2009. (TR 77-87.) Plaintiff then filed the instant application for supplemental security income with a protective filing date of October 11, 2011, alleging that he has been disabled since September 1, 2009, due to a bad back, bad knees, blindness in his right eye, and tightness in his stomach. (TR 14, 88, 204, 229.) The Social Security Administration denied Plaintiff's claims on February 15, 2012, and Plaintiff requested a *de novo* hearing. (TR 88-103, 104-06.) On July 30, 2013, Plaintiff appeared with a representative and testified at the hearing before ALJ Patrick J. MacLean. (TR 32-68.) Plaintiff amended his alleged onset date to the application date of October 11, 2011 at the hearing. (TR 35.) In an August 30, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 14-27.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 7-14), Defendant (docket no. 16 at 4-12), and the ALJ (TR 21-26) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations

2

by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of October 11, 2011, and that Plaintiff suffered from the following severe impairments: chronic alcoholism, depressive disorder NOS, and blind right eye.  (TR 17.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 17-20.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant can occasionally climb ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs and balance, stoop, crouch, kneel, and crawl; the claimant must avoid all use of moving machinery and all exposure to unprotected heights; the claimant is limited to occupations not requiring peripheral acuity or depth perception; the claimant is limited to work involving simple, routine, and repetitive tasks in a low stress job defined as one with no decision making required; the claimant is limited to only occasional changes in the work setting with no judgment required on the job; the claimant can have no interaction with the public and can have only occasional interaction with coworkers.

(TR 20-25.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 26.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since October 11, 2011, the date the application was filed.  (TR 15, 27.)

3

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

4

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

5

### C.      Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he Decision failed to properly consider several medical conditions as 'severe' within[] the meaning of the act and did not properly consider the mental limitations in formulating a proper residual functional capacity relating to exertional and non-exertional limitations;" (2) "[t]he ALJ made impermissible credibility findings and [did] not give the proper weight to the complaints of pain indicated by the Plaintiff in violation of SSR 96-7;" (3) "[t]he ALJ appears to have improperly applied [] res judicata and collateral estoppel [under *Drummond*] and not adopted some of the previous findings without including the previous decision of medical evidence into evidence;" and (4) "[t]he ALJ failed to include his finding of moderate difficulties in concentration, persistence or pace in the adopted hypothetical posed to the VE."  (Docket no. 14 at 17-25.)

6

         1.       *The ALJ's Step-Two Determination*

Plaintiff alleges that the ALJ did not properly assess his severe impairments, which led to an incorrect RFC assessment and Step-Five determination.  (Docket no. 14 at 17-19.)  A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).  But the step-two severity analysis is simply a threshold determination.  It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe.  *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).  This is so because the second step is designed simply to screen out and dispose of baseless claims.  *Anthony*, 266 F. App'x at 457.  Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at Step Two of the sequential evaluation process, the ALJ found that Plaintiff suffered from the severe impairments of chronic alcoholism, depressive disorder NOS, and blind right eye.  (TR 17.)  The ALJ then acknowledged that Plaintiff had been diagnosed with other medically determinable impairments,

such as mild degenerative joint disease of the knees, prostate cancer surgery, and hypertension. The ALJ noted, however, that the record did not contain any clinical or diagnostic findings or durational treatment to support the severity of those other impairments. Hence, he found that Plaintiff had not established that any of those impairments caused more than a minimal limitation in Plaintiff's ability to perform basic work activities longitudinally. Essentially, the ALJ classified Plaintiff's mild degenerative joint disease of the knees, prostate cancer surgery, and hypertension as non-severe impairments. Nevertheless, the ALJ considered Plaintiff's complaints of knee pain, the objective medical evidence related to Plaintiff's knees, and Plaintiff's status post-prostate surgery throughout his assessment of Plaintiff's RFC. (*See* TR 21-25.) To the extent that the ALJ does not mention Plaintiff's hypertension at the remaining steps of the sequential evaluation process, any error is harmless, as Plaintiff neither alleges, nor are there any opinions from treating physicians, that he has any functional limitations resulting from the hypertension. Accordingly, the ALJ's failure to classify Plaintiff's mild degenerative joint disease of the knees, prostate cancer surgery, and hypertension as severe impairments does not constitute reversible error.

Plaintiff argues that "[t]reatment notes from the treating psychiatric care providers appear to be effectively ignored and grouped into the severe impairment classified by [the ALJ] as 'depressive disorder [N]OS.'" (Docket no. 14 at 18.) Plaintiff then asserts that Drita Gjelaj, LMSW, diagnosed Plaintiff with depressive disorder and alcohol dependence. (*Id*. at 19.) Plaintiff, however, asserts no error in this respect, as the ALJ found that Plaintiff suffered from severe impairments of depressive disorder NOS and chronic alcoholism. Next, Plaintiff cites records from a May 21, 2012 Initial Comprehensive Assessment completed by Ms. Gjelaj, at which Plaintiff reported trouble sleeping and auditory hallucinations, and Ms. Gjelaj noted that

Plaintiff had marked impairments in job/school performance, friendship/peer relationships, hobbies/interests/play activities, physical health, and sleeping habits.   (TR 480-87.) Nevertheless, the items cited by Plaintiff are symptoms, not medically determinable impairments that could be classified as severe impairments.  Notably, Plaintiff does not indicate what, if any, severe impairments should have been assessed by the ALJ based on these symptoms. Furthermore, as a social worker, Ms. Gjelaj is not an acceptable medical source as defined in the regulations, and her opinions are not entitled to any special weight or consideration.  20 C.F.R. §§ 404.1513, 416.913; *Taylor v. Comm'r of Soc. Sec.*, No. 1:11-cv-46, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012) (citing 20 C.F.R. § 404.1513(d)(1)).   Plaintiff's argument lacks merit in this regard.

Additionally, to the extent that Plaintiff argues that the ALJ should have found the diagnoses of alcohol dependence and schizoaffective disorder as opined by the consultative examiner, Dr. Nick Boneff, Ph.D., LP, to be severe impairments, Plaintiff's argument fails. First, the ALJ found that Plaintiff suffered from a severe impairment of chronic alcoholism, which is substantially similar to alcohol dependence.  (TR 17.)  Next, Dr. Boneff was not Plaintiff's treating physician; therefore, his opinions are not entitled to controlling weight. Furthermore, any error committed by the ALJ here is harmless, as the ALJ incorporated the functional limitations assessed by Dr. Boneff into Plaintiff's RFC.  (*Compare* TR 362 *with* TR 20.)  For all of the reasons discussed above, Plaintiff's Step-Two challenge fails.

### 2.    The ALJ's Assessment of Plaintiff's Credibility

Next, Plaintiff asserts that "[t]he ALJ made an impermissible credibility finding relating to [Plaintiff's] consistent and medically supported complaints of pain."  (Docket no. 14 at 19-20.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

10

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and he found that Plaintiff's allegations were not entirely credible.  (TR 21-25.)  In reaching this determination, the ALJ reasoned as follows:

> A review of the evidence shows the claimant is not fully credible.  His extensive daily activities are inconsistent with his complaints of severe pain.  There is no objective basis for a severe physical impairment but he has stated he has severe pain all over his joints.   The claimant's treatment has been routine and conservative and tests and studies do not support allegations of locking of his knees and severe pain.  He testified he has used a prescribed cane but there is no medical evidence to support the need for a cane, much less, any treatment notes from the nursing home since April 2013, where he testified he continues to reside and was prescribed the cane.  In fact, that treatment note indicates no reports of musculoskeletal pain.   The claimant's subjective reports are grossly disproportionate with the objective evidence and thus undermine his general credibility.  In addition, the claimant's credibility is diminished due to his history of alcoholism and reported incarceration for a felony.

(TR 23-24.)  The ALJ also found that Plaintiff's testimony that he is unable to sit, stand, or walk for longer than thirty minutes and that he drops things was inconsistent with the normal findings from his consultative examinations.  (TR 25.)

In his brief, Plaintiff states, "[i]n the case at bar it appears that the ALJ appeared to attempt to address the credibility determination indicating 'extensive' activities of daily living." (Docket no. 14 at 20.)  Plaintiff then asserts that it should be noted that at the time of the hearing, he had received a radical prostatectomy and was living full time at a nursing facility.  (*Id.*) While not explicitly stated, Plaintiff seemingly argues that the ALJ erred by considering Plaintiff's activities of daily living in his credibility determination because, at the time of the hearing, Plaintiff was living at a nursing facility following a prostatectomy and was arguably not participating in "extensive" daily activities.   But the ALJ acknowledged that Plaintiff was recovering from prostate surgery at a rehabilitative facility, and he found no evidence that the surgery would result in a residual impairment lasting more than twelve months.  (TR 17, 23.)

11

Thus, the ALJ reasonably considered Plaintiff's pre-surgery activities of daily living in his decision, which included personal care, cooking, shopping, laundry, attending church, and taking public transportation.  (TR 18, 23.)  Notably, Plaintiff does not cite authority that would preclude the ALJ from considering Plaintiff's pre-surgery activities of daily living.  Moreover, the ALJ did not base his credibility determination solely on Plaintiff's pre-surgery activities of daily living; the ALJ also reasoned that Plaintiff's allegations were inconsistent with the medical record and that Plaintiff's treatment was routine and conservative.  To the extent that Plaintiff's statements can be considered an argument, Plaintiff's "argument" fails.

Next, Plaintiff claims that "the treating physicians and State agency physicians indicated problems and limitations that were not included in the residual functional capacity or considered in relation to determining the veracity or credibility of [Plaintiff's] statements."  (Docket no. 14 at 20.)  Plaintiff, however, does not specify what those problems and limitations are or which of his medical providers assessed such limitations.  He also offers no analysis regarding how those limitations and problems would affect the ALJ's RFC or credibility assessments.  The Court is not obligated to scour the record to develop this argument on Plaintiff's behalf, and it declines to do so.  *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

The immediate discussion demonstrates that the ALJ provided specific reasons for discounting Plaintiff's credibility in his decision, and, in doing so, applied many of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight.  The ALJ's assessment of Plaintiff's credibility is

supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

### 3. The ALJ's Application of the Res Judicata Doctrine

Plaintiff asserts that "[t]he ALJ appears to have improperly applied [] res judicata and collateral estoppel [under *Drummond*] and not adopted some of the previous findings without including the previous decision of medical evidence into evidence. (Docket no. 14 at 20-23.) In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that social-security claimants and the Commissioner are barred by principles of res judicata from relitigating issues that have previously been determined. 126 F.3d 837 (6th Cir. 1997). The Commissioner is bound by the principles of res judicata unless there is new and material evidence of changed circumstances. *Id*. at 842; SSAR 98-4(6), 63 FR 29771-01 (June 1, 1998). Where a claimant who has previously been adjudicated "not disabled" seeks to avoid application of res judicata, he must provide proof that his condition has worsened since the date of the prior decision to such a degree that he is no longer capable of engaging in substantial gainful activity. *Vesey v. Comm'r of Soc. Sec.*, No. 11-10967, 2012 WL 4475657, at *10 (E.D. Mich. Aug. 6, 2012) (citations omitted).

On February 24, 2009, Plaintiff was found "not disabled" by ALJ Richard L. Sasena, who determined that Plaintiff suffered from severe impairments of major depression, history of back pain, and polysubstance abuse. (TR 77-87.) He further found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, repetitive tasks with no interaction with the public and occasional contact with coworkers, and the work should allow for occasional postural movements.

(TR 84-86.)   Thus, ALJ MacLean was bound by this determination unless he found new and material evidence of changed circumstances.   Noting his responsibility under *Drummond*, ALJ MacLean found that Plaintiff's condition had not materially worsened since the prior decision but that it had materially changed in some respects.   (TR 14, 24.)   Specifically, the ALJ determined that the "history of back pain" severe impairment assessed by ALJ Sasena was no longer a severe impairment for purposes of the instant matter.   (TR 14.)   In so determining, the ALJ reasoned that a "history of back pain" is a description of symptoms, not a medically determinable impairment.   (TR 14.)   The ALJ also reasoned that the record contained no diagnostic evidence of even mild degenerative changes of the spine, and there were no findings in Plaintiff's treatment records to support a conclusion that it remained a severe impairment. (TR 14, 24.)   Additionally, the ALJ determined that Plaintiff's current treatment records warranted the elevation of the blindness in Plaintiff's right eye to a severe impairment.   (TR 15.) The ALJ then concluded that he adopted the findings of the previous ALJ, except in the case of Plaintiff's changed circumstances.   (TR 15.)

Plaintiff argues that the ALJ erred by considering the prior decision without incorporating the prior decision and its underlying evidence into the administrative record.   Plaintiff's argument is without merit.   ALJ Sasena's February 24, 2009 decision is, in fact, part of the record in this matter.   (*See* TR 77-87.)   And, as Defendant points out, Plaintiff's position that the ALJ should have incorporated the evidence underlying the prior decision into the instant administrative record has been rejected by the Sixth Circuit.   (Docket no. 16 at 16 (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 725-26 (6th Cir. 2013); *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 362-63 (6th Cir. 2004).)

Additionally, Plaintiff seemingly argues that the ALJ erred by finding that Plaintiff's "history of back pain" is no longer a severe impairment, but Plaintiff does not cite any evidence or offer any argument to the contrary.  Indeed, the ALJ reviewed the evidence for the current alleged disability period and found it to be insufficient to support a conclusion that Plaintiff's back pain continued to be a severe impairment.  Nevertheless, the ALJ found that Plaintiff's combined non-severe physical impairments supported the adoption of the prior ALJ's physical RFC, and he further limited the RFC with regard to Plaintiff's visual impairment.  (TR 14-15, 24.)  Consequently, the current RFC assessment is more advantageous to Plaintiff than the previous RFC assessment, and any error committed by the ALJ in finding that Plaintiff's "history of back pain" is no longer a severe impairment would be harmless.  But there is no error here; the ALJ properly considered the record evidence, and his adoption of the prior ALJ's findings except in the instances where Plaintiff's condition had materially changed is supported by substantial evidence.  The undersigned finds that ALJ MacLean did not err in his application of *Drummond*; Plaintiff's Motion should be denied with regard to this issue.

### 4.    *Plaintiff's Difficulty in Maintaining Concentration, Persistence, or Pace*

Finally, Plaintiff asserts that "[t]he ALJ failed to include his finding of moderate difficulties in concentration, persistence or pace in the adopted hypothetical posed to the VE." (Docket no. 14 at 23-25.)  Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation.  "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions."  *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted).  Courts are more likely to order a sentence-four remand in cases where the

ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion that found similar moderate deficiencies and indicated that the plaintiff was still capable of sustained work. *Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *4 (E.D. Mich. Nov. 28, 2011)).   Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted).   Such limitations may, however, result in the claimant being unable to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005).

Here, the ALJ did not make an independent decision regarding Plaintiff's ability to maintain concentration, persistence, or pace.   In fact, the ALJ relied upon the opinions of two medical sources in making such a determination.   First, James Tripp, Ed.D., the non-examining state-agency consultant who made the initial disability determination in this matter assessed moderate difficulties in Plaintiff's ability to maintain concentration, persistence, or pace.   (TR 98.)   In doing so, Dr. Tripp assigned great weight to the opinion of the consultative examiner, Dr. Boneff, and found that Plaintiff was able to perform extremely simple work.   (TR 99, 101-02.) The ALJ then discussed and assigned great weight to Dr. Tripp's opinion, and incorporated the limitations assessed by Dr. Tripp into Plaintiff's RFC by limiting him to work involving simple, routine, and repetitive tasks.   (TR 19, 20.)

Next, the ALJ relied on the opinion of Dr. Boneff, a licensed psychologist who conducted a consultative examination of Plaintiff on February 6, 2012.   (TR 359-62.)   After the exam, Dr. Boneff completed the following medical source statement with regard to Plaintiff:

16

> Based on today's exam, the claimant demonstrated little in the way of cognitive strengths, with significant problems with concentration as evidenced by difficulties performing calculations accurately. He also had significant problems with immediate and short-term memory and the capacity to pay attention. He displayed difficulty with judgment and impulse control as well as problems with abstract thinking. He would appear to have difficulty engaging in work-type activities other than those of an extremely simple repetitive nature, remembering and executing a two or three step repetitive procedure on a sustained basis, with little, if any, independent judgment or decision-making required.

(TR 362.) In his decision, the ALJ discussed and considered Dr. Boneff's findings regarding Plaintiff's concentration problems on two separate occasions. (TR 23, 25.) The ALJ also acknowledged and assigned substantial weight to Dr. Boneff's opinion regarding the functional limitations caused by Plaintiff's concentration problems. (TR 25.) The ALJ then explicitly incorporated these limitations into Plaintiff's RFC: "To insure [Plaintiff] remains on task despite moderate difficulties in concentration, persistence, and pace, he is limited to low stress work, defined as no decision-making, and to no use of judgment and only occasional changes in the work setting." (TR 24.)

The discussion above demonstrates that the ALJ relied upon and adopted the opinions of two medical sources who assessed Plaintiff's moderate difficulties in maintaining concentration, persistence, and pace, and found that Plaintiff was still able to engage in substantial gainful activity, albeit with limitations. The ALJ then incorporated those limitations into Plaintiff's RFC and the hypothetical questions that he posed to the VE, to which the VE responded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (TR 63-65.) There is no error here on the part of the ALJ, as the ALJ appropriately accommodated for Plaintiff's limitations in concentration, persistence, or pace in the RFC and the hypothetical questions. It is, therefore, recommended that Plaintiff's Motion for Summary Judgment on this issue be denied.

## VI.      CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 14) and GRANT Defendant's Motion for Summary Judgment (docket no. 16).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 5, 2016              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

18

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 5, 2016          <u>s/ Lisa C. Bartlett</u>
                                 Case Manager